1        HONORABLE RONALD B. LEIGHTON

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

KELLY POTIS,                          CASE NO. C14-826-RBL
9
                    Plaintiff,        ORDER GRANTING
10                                     DEFENDANTS' MOTION FOR
        v.                            SUMMARY JUDGMENT
11
PIERCE COUNTY, et al.                 DKT. #22
12
                    Defendants.
13

14        THIS MATTER is before the Court on Defendants Pierce County and Deputy Aaron

15   Thompson's Motion for Summary Judgment [Dkt. #22]. Thompson allegedly noticed that

16   Plaintiff Kelly Potis's then-boyfriend's headlight was out. When Thompson activated his

17   overhead lights, Jeffrey Smith did not pull over. Instead, he drove four more blocks to Potis's

18   house and immediately ran inside. Thompson pursued Smith, rammed down the door, and

19   tackled him. Once Potis reached the house, she began yelling at Thompson. Thompson arrested

20   both of them; only Potis sued.

21        Potis argues Thompson violated her Fourth Amendment rights by arresting her for

22   questioning his unlawful detention of Smith and by using excessive force. She argues Smith's

23   detention was unlawful for two reasons: first, Thompson lacked probable cause to arrest Smith

24

1    because his headlight was not out, and second, Thompson unlawfully entered her home. Potis

2    also brings Washington state law false arrest and battery claims.[1]

3         Thompson argues he had probable cause to arrest Potis because he lawfully entered her

4    home in hot pursuit of Smith and because he reasonably believed she had interfered with his

5    arrest in violation of RCW 9A.76.020(1). He argues that he used a reasonable amount of force

6    because a "strong arm take down" is unlikely to cause serious bodily harm, and because Potis

7    admits she suffered no harm or injury. Thompson also argues that state law qualified immunity

8    shields him from suit against Potis's false arrest and battery claims because he followed statutory

9    and County protocols.

10                              **FACTUAL SUMMARY**

11        In the middle of the night on March 17, 2012, Smith was driving Potis to her duplex in

12   Puyallup, where they both lived. Thompson claims he noticed Smith's headlight was out and that

13   he activated his siren and air horn to instruct Smith to pull over. *See* Dkt. 23, Thompson Dec. at

14

15

16

17

---

18   [1]     Potis voluntarily dismissed her claims regarding the adequacy of the medical care she
19   received while in custody at the Pierce County Jail. *See* Dkt. #31 at 1. It is unclear whether Potis
     intended to include her claim that Thompson negligently failed to provide her with her own
20   inhaler and oxygen tank after allegedly promising he would. Even if she did not, she has not
     demonstrated that Thompson's alleged breach—requiring her to use the jail's medical equipment
21   and medicine instead of her own—caused her any injury.
         Potis has failed to establish a genuine issue of material fact on this claim. *See Celotex*
22   *Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986); *see also Anderson v. Liberty Lobby,*
     *Inc.*, 477 U.S. 242, 248–50, 106 S. Ct. 2505 (1986). Her claims that Thompson and unnamed jail
23   staff acted negligently and with deliberate indifference for her medical needs by failing to
     provide her with her own inhaler and oxygen tank are DISMISSED with prejudice. Her *Monell*
24   claim against the Pierce County Sheriff's Department is similarly DISMISSED with prejudice.

9 (police report). Smith and Potis claim Smith's headlight was not out, and they did not notice Thompson's patrol car.[2]

Smith continued driving for four blocks, until he reached Potis's duplex. He immediately ran inside, allegedly to use the bathroom. Potis stayed in the car to use her inhaler and to gather her things. Thompson parked and ran after Smith. Smith either shut, or was shutting, the front door. Thompson rammed it open and got Smith to the ground.

When Potis reached the door, she saw a uniformed Thompson on top of Smith, attempting to restrain him. She claims she had not seen or heard Thompson before, so was confused and frightened. She began to yell at Thompson, in close proximately to his face. Thompson yelled too, allegedly telling her to step back. He claims, and she disputes, that she attempted to push him off Smith, so he had to push her away.

After handcuffing Smith, Thompson stood up and turned his attention to Potis. She backed away nearer the front door, contemplating fleeing. Thompson used a "straight arm bar take down" to force her to the ground to handcuff her. Potis was scared but not hurt. Thompson arrested her for obstructing Smith's arrest in violation of RCW 9A.76.020(1). She spent approximately forty-two hours at the Pierce County Jail.

## DISCUSSION

**A.    Standard of Review.**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether

---

[2]    Another deputy testified that Thompson activated the patrol car's overhead lights. *See* Dkt. #26, Maas Dec. at 1, ¶ 3 ("The location of the incident was not well lit[.] I was able to locate Deputy Thompson[] because the overhead lights of his patrol car were activated.")

1    an issue of fact exists, the Court must view all evidence in the light most favorable to the

2    nonmoving party and draw all reasonable inferences in that party's favor. *See Anderson v.*

3    *Liberty Lobby, Inc*., 477 U.S. 242, 248–50, 106 S. Ct. 2505 (1986); *see also Bagdadi v. Nazar*,

4    84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is

5    sufficient evidence for a reasonable factfinder to find for the nonmoving party. *See Anderson*,

6    477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to

7    require submission to a jury or whether it is so one-sided that one party must prevail as a matter

8    of law." *Id*. at 251–52. The moving party bears the initial burden of showing no evidence exists

9    that supports an element essential to the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477

10   U.S. 317, 322, 106 S. Ct. 2548 (1986). Once the movant has met this burden, the nonmoving

11   party then must show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 250. If

12   the nonmoving party fails to establish the existence of a genuine issue of material fact, "the

13   moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24.

14   **B.    Qualified Immunity.**

15   "The doctrine of qualified immunity protects government officials 'from liability for civil

16   damages insofar as their conduct does not violate clearly established statutory or constitutional

17   rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223,

18   231, 129 S. Ct. 808 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727

19   (1982)). It "shields an officer from suit when she makes a decision that, even if constitutionally

20   deficient, reasonably misapprehends the law governing the circumstances confronted. Even if the

21   officer's decision is constitutionally deficient, qualified immunity shields her from suit if her

22   misapprehension about the law applicable to the circumstances was reasonable." *Brosseau v.*

23   *Haugen*, 543 U.S. 194, 198 (2004). The purpose of the doctrine is "to recognize that holding

24

1   officials liable for reasonable mistakes might unnecessarily paralyze their ability to make

2   difficult decisions in challenging situations, thus disrupting the effective performance of their

3   public duties." *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009). Because "it is inevitable that

4   law enforcement officials will in some cases reasonably but mistakenly conclude that probable

5   cause is present," qualified immunity protects officials "who act in ways they reasonably believe

6   to be lawful." *Garcia v. Cty. of Merced*, 639 F.3d 1206, 1208 (9th Cir. 2011). It "gives ample

7   room for mistaken judgments" and protects "all but the plainly incompetent or those who

8   knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224 (1991); *see also Ashcroft v. al–Kidd*,

9   563 U.S. ——, ——, 131 S. Ct. 2074, 2085 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341,

10  106 S. Ct. 1092 (1986)).

11          Qualified immunity protects officers not just from liability, but from suit: "it is

12  effectively lost if a case is erroneously permitted to go to trial," and thus, the claim should be

13  resolved "at the earliest possible stage in litigation." *Anderson v. Creighton*, 483 U.S. 635, 640

14  n.2, 107 S. Ct. 3034 (1987). The Supreme Court has endorsed a two-part test for resolving such

15  claims: a court must decide (1) whether the facts that a plaintiff has alleged "make out a violation

16  of a constitutional right," and (2) whether the "right at issue was 'clearly established' at the time

17  of the defendant's alleged misconduct." *Pearson*, 555 U.S. at 232 (referencing *Saucier v. Katz*,

18  533 U.S. 194, 201, 121 S. Ct. 2151 (2001)). Courts may address these two prongs in either order.

19  *See id.*, 555 U.S. at 236.

20  **C.      Unlawful Seizure.**

21          Potis argues Thompson lacked probable cause to arrest her for obstruction, because he

22  was unlawfully arresting Smith. She argues Smith's detention was unlawful because his

23  headlight was not out; rather, Thompson was engaging in "a DUI fishing expedition" in bad

24

faith. Potis argues Thompson unlawfully entered her home, because the hot pursuit of a fleeing

misdemeanant, without more, does not create sufficient exigent circumstances to justify an

officer's entry into a suspect's home without a warrant or consent.

Thompson argues he had probable cause to arrest Potis because he lawfully entered her

house and reasonably believed she had hindered his arrest of Smith. Thompson relies upon the

Supreme Court's decision in *Stanton v. Sims*, 134 S. Ct. 3, 4–5, 187 L. Ed. 2d 341 (2013), where

it decided that the law is not clearly established regarding whether an officer's warrantless entry

into a home while in hot pursuit of a fleeing misdemeanant violates the Fourth Amendment

protection against warrantless searches and seizures.

Officer Stanton and his partner responded to a call about a disturbance involving a person

with a baseball bat. *See id*. at 3. When they approached, they noticed three men walking in the

street. *See id*. One, Nicholas Patrick, began to run away. *See id*. at 4. Although Patrick was not

holding a baseball bat, Stanton considered Patrick's behavior suspicious, and yelled for him to

stop. *See id*. Patrick ignored Stanton and ran into a fenced yard where Stanton could not see him.

*See id*. Believing Patrick had committed a misdemeanor by ignoring his orders, Stanton "made

the 'split-second decision' to kick open the gate in pursuit of Patrick." *Id*. Unfortunately, the

owner of the house, Drendolyn Sims, was standing behind the gate. *See id*. The swinging gate cut

her forehead and injured her shoulder. *See id*. She sued Stanton for unreasonably searching her

home without a warrant in violation of the Fourth Amendment. *See id*.

Referencing its earlier decision in *United States v. Santana,* 427 U.S. 38, 42–43, 96 S. Ct.

2406 (1976)—where it had concluded that a suspect may not defeat an arrest set in motion in a

public place by the expedient of escaping to a private place—the Court concluded Stanton was

not plainly incompetent because no clearly established law prohibited his warrantless entry into a

1   home while in hot pursuit of a feeling misdemeanant. *See id*. at 6–7. On remand, the Ninth

2   Circuit granted Stanton qualified immunity. *See Sims v. Stanton*, 739 F.3d 450 (9th Cir. 2014).

3          Thompson reasonably believed Smith had committed a misdemeanor—whether by

4   driving with a defective headlight or by ignoring Thompson's instructions to pull over.

5   Thompson was chasing him in hot pursuit. *See, e.g.*, Santana, 427 U.S. at 43 (defining "hot

6   pursuit" as "some sort of chase"). Under *Stanton*, Thompson therefore did not act unlawfully by

7   chasing a fleeing Smith into her house without a warrant. *See* 134 S. Ct. at 4–5.

8          Thompson also did not unlawfully arrest Potis. By yelling at and distracting Thompson,

9   she impeded his lawful arrest of Smith. Thompson had probable cause to believe she had

10  violated RCW 9A.76.020(1), which makes willfully hindering, delaying, or obstructing a police

11  officer a gross misdemeanor. Because Thompson did not knowingly violate the law nor

12  incompetently pursue and arrest Smith or Potis, he has qualified immunity. Potis's claim that

13  Thompson unlawfully seized her in violation of her Fourth Amendment rights is therefore

14  DISMISSED with prejudice.

15  **D.    Excessive Force.**

16         Potis argues Thompson used excessive force when arresting her because he "brought her

17  to the ground and placed his knee on her neck and throat area." *See* Dkt. #31 at 4. Thompson

18  argues that he applied a reasonable amount of force when arresting her, because a "strong arm

19  take down" is unlikely to cause serious bodily harm and Potis was not harmed.

20         When analyzing an excessive-force-during-arrest claim, a court looks to the Fourth

21  Amendment and its "reasonableness" standard in order to balance the nature and quality of the

22  intrusion on the individual's constitutional interests against countervailing governmental

23  interests. *See Graham v. Connor*, 490 U.S. 386, 395, 396, 109 S. Ct. 1865 (1989). "Fourth

24

1    Amendment jurisprudence has long recognized that the right to make an arrest … necessarily

2    carries with it the right to use some degree of physical coercion … to effect it." *Id.* (citing *Terry*

3    *v. Ohio*, 392 U.S. 1, 22–27, 88 S. Ct. 1868 (1968)). "Not every push or shove, even if it may later

4    seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. *Id.*

5    (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). Indeed, "the 'reasonableness' of

6    a particular use of force must be judged from the perspective of a reasonable officer on the scene,

7    rather than with the 20/20 vision of hindsight." *Id.* (citing *Terry*, 392 U.S. at 20–22).

8          When evaluating "reasonableness," a court questions whether the officer's actions are

9    "objectively reasonable" in light of the facts and circumstances, without regard to the officer's

10   underlying intent or motivation. *See Scott v. United States*, 436 U.S. 128, 137–139, 98 S. Ct.

11   1717 (1978). It considers the severity of the crime, whether the suspect posed an immediate

12   threat to the safety of the officer or others, and whether the suspect was actively resisting arrest

13   or attempting to flee. *See Graham*, 490 U.S. at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8–9,

14   105 S. Ct. 1694 (1985). A court also must allow "for the fact that police officers are often forced

15   to make split-second judgments—in circumstances that are tense, uncertain, and rapidly

16   evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

17         Thompson had a reasonable belief that Potis would not heed his instructions to submit to

18   an arrest, because she had ridden in a car that had apparently (to Thompson) ignored his

19   instructions to pull over and because she had attempted to thwart Smith's arrest. When

20   Thompson observed her stepping backwards towards the front door in contemplation of fleeing,

21   then, he reasonably used a "strong arm takedown" to stop and arrest her without hurting her.

22   Thompson used a reasonable amount of force. Potis's claim that he violated her Fourth

23   Amendment rights by using excessive force to arrest her is DENIED with prejudice.

24

1   **E.      State Law False Arrest and Battery Claims.**

2          Potis claims Thompson falsely arrested her and committed battery, but she fails to

3   articulate how Thompson did so and why state law qualified immunity does not shield him from

4   suit. Thompson argues that qualified immunity shields him because he adhered to his statutory

5   duty by arresting her for obstruction, followed the procedures outlined by statute and the Pierce

6   County Sheriff's Department for so doing, his split-second decision to arrest her was reasonable,

7   and he did not injure or harm her.

8          Washington state qualified immunity rests on a different analysis than qualified immunity

9   under § 1983. *See Staats v. Brown*, 139 Wash.2d 757, 779, 991 P.2d 615 (2000). An officer has

10  state qualified immunity from suit if the officer (1) carried out a statutory duty (2) according to

11  the procedures dictated to him by statute and by his superiors and (3) acted reasonably. *See id*.

12  (citing *Guffey v. State*, 103 Wash.2d 144, 152, 690 P.2d 1163 (1984)).

13         Because Thompson lawfully arrested Potis, she cannot sustain an action for false arrest.

14  *See, e.g., McKinney v. City of Tacoma*, 103 Wash. App. 391, 408, 13 P.3d 631 (2000). Even if

15  she could, qualified immunity shields Thompson from suit: Potis does not dispute he was

16  carrying out a statutory duty according to procedures dictated to him by statute and by his

17  superiors, and as a lawful arrest, his actions were reasonable.

18         Similarly, where an officer's use of force was reasonable under the Fourth Amendment,

19  he lawfully touched the arrestee and is entitled to state law qualified immunity on a battery

20  claim. *See id*. at 409; *see also Gallegos v. Freeman*, 172 Wash. App. 616, 622, 291 P.3d 265

21  (2013). Potis's battery claim necessarily fails too. Her state law claims are therefore

22  DISMISSED with prejudice.

23

24

1

**CONCLUSION**

2      Thompson has qualified immunity under § 1983 and Washington state law. Defendants'

3   Motion for Summary Judgment [Dkt. #22] is GRANTED, and the case is DISMISSED with

4   prejudice.[3]

5      IT IS SO ORDERED.

6      Dated this 22nd day of April, 2016.

7

8                                             _____

9                                             Ronald B. Leighton
                                              United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21
   _____

22

23      [3] Defendants filed a Motion to Dismiss [Dkt. #40] due to Potis's failure to comply with
   the Court's scheduling order. She untimely submitted her pretrial statement and proposed jury
   instructions to Defendants and was absent from the Court's pretrial conference. Defendants'
24   Motion is GRANTED. *See* Fed. R. Civ. Pro. 16(f); *see also* W.D. Wash. Local Rule 11(c).